Hear ye, hear ye, hear ye. The United States Code of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. Welcome. Good morning. Fifth Circuit. We have three cases to be heard today. Your panel, as you probably know, includes me, Judge Dennis, Judge, Judge, where is he? Dave Higginson. And so we'll start with your case, which is United States of America versus Wilbert Brown. And hear first from Kimberly Keller. May it please the court. My name is Kim Keller. I'm here today on behalf of Appellant Defendant Wilbert Brown. This is a post-Diggles case about contradictory oral and written judgments in revocation cases. Here, there was quite a bit more in the written judgment than what was pronounced at the revocation hearing. The court will be able to tell me if I'm wrong, but I think the reason we're here today is to receive guidance from this court about what all about Diggles, which referred and really focused on subsection D of section 3583, what all from Diggles applies to revocation cases and when you have the sentencing occurring again after a revocation. This court has issued multiple post-Diggles cases, Grogan, Metal Guadalupe, Martinez. None of those that maybe what I'll do is break it up into the three parts. Most of the parts, the government has, we have Mr. Brown and the government have agreed on. There's the special assessment, the restitution and the special conditions. And I'll go right into restitution real quick because when we wrote our brief, we were missing a part of the revocation hearing. A part of our challenge was that there was not an oral pronouncement. The district court, Judge Crone was not, did not mention, at least in the portion of the revocation hearing that we were provided, did not discuss restitution directly. The government was able to capture and get the rest of that hearing and put it into a supplemental record, which now me having read it, I do see an oral discussion by Judge Crone of restitution going into detail with a number. And so we did raise a challenge about a contradiction between the oral pronouncement and the written judgment regarding restitution. But I don't think that we're going to maintain that on the Giggles ground. If the court decides to not apply, if the court decides not to apply Diggles to revocation cases, then we'll retain that challenge. But if the court does decide Diggles and the framework of Diggles applies to revocation in whole, we would withdraw that restitution challenge. Well, this is really just looking at a sentencing. It just so happens that complexity with revocations is frequently judges decide to sentence at the same time. So the only unusual thing is Diggles in large part acknowledged that you usually get a PSR and you have a lot of time and it's assumed that everyone's read the PSR and those can be happens at once. But if the government, if you're now acknowledging the restitution point, the government's answer is sufficient. What's left that you're asking us to do that the government isn't acknowledging? Well, I would like the court. I mean, I have had cases before the court where the government acknowledges that there should be a, uh, a striking of certain parts of the judgment, but the court disagrees. And so on the five special conditions, I'm asking. Yeah. My question assumes that if we agree with the government that there is plain error, what do you have left that is contested? That's my question. I have nothing. If, if Diggles is going to be applied in whole, because when I went through section 3583 and I was looking at the provisions and there's a footnote in Diggles where this court specifically speaks to and says, we're using these terms, discretionary, mandatory, this distinction specifically with reference to subsection D, but within 3583, there are other subsections that, uh, do have some different language, some discretionary, some mandatory language that apply to revocation cases that don't come up in a traditional. I'll put you directly to the issue that I thought you still might disagree about the special assessment. It's $90. That's still outstanding. That is your contention that it shouldn't have it. Yes. And do you think the government agrees with that position? No, I think the government's position is that because the special assessment is mandatory and if you apply Diggles across and you use the discretionary mandatory categorization that the special assessment doesn't ever have to be spoken up at the world pronouncement. And I disagree with that. And the reason I disagree with that is because when you look at the subsections of 3583 that speak specifically to revocation cases, the entirety of the language used in those subsections is discretionary. It's may there is no shall. And so while in the original sentence, there is a shall that comes out in the subsection in the section cited by the government, which is what makes the special fee mandatory. We are now not just governed by that statute. We are governed by the subsections of 3583 that authorize, authorize this, uh, the district court to make modifications. And so with that authorization and that discretion, my argument is that there should be an oral pronouncement of the special assessment. But he was, he was revoked at the same time he was sentenced. And the first violation supporting the revocation was the failure to pay special assessment. So why isn't that enough of an oral pronouncement? It's a little weird to think we're going to say it's not enough to put in the J and C if the whole point of the hearing was to validate that he hadn't paid it, but he's still driving in his Cadillac. When I, when I read the hearing, your honor, what I read about was the money wasn't all paid, but it was hard to just to, to discern from the testimony was when he did make that one payment, because he the restitution or was that payments made toward the special assessment. And so it was difficult for me to discern whether the testimony that was taken and the discussion that was going on, was that talking about the failure to pay restitution, which was also another or the failure to pay the special fee. And so if there wasn't notice of the failure to pay the special fee that does not substitute in for the failure to orally pronounce the special assessment. And then now we do have it in the written judgment. There was some ambiguity in there. And I would like to note for the record that it is very clear from the testimony that was given from the discussion, even by the judge, that there were some mental health issues for this gentleman. Mr. Brown was, he wasn't, he was I think he was put in for six months in a mental institution shortly before all of this happened. And so when we're talking about the notice, the due process aspect, and the Supreme Court has told us over and over again, that revocation cases are separate and distinct. It's not the same proceeding and due process is required. So the question is, was that enough? What happened at this hearing? Was that enough? The discussion that you didn't pay some money, how much money did you pay? And he did talk about making three payments. Was that enough to put him on notice of the omitted special assessment discussion at the oral pronouncement stage? I thought in front of the magistrate, he made that argument about three, but then when they redid the whole thing again, the district court, again, I don't ever understand why district courts delegate it and then redo it, but he did redo it. And I thought the district court on redo had the probation officer say, no, it's just been $10. $10 towards what though, is what I couldn't understand. It was only $10 towards either. He's $90 short, at least on a special assessment. Right. I guess my argument, and I'm just trying to preserve all errors here, my argument about the special assessment. And the reason that I do not want to waive that argument is because when you move into the other subsections of 3583, you do have nothing but discretionary language included. And so I understand there is a statute on the books, making the special assessment mandatory at a traditional sentencing. But if we're now under the umbrella of revocation hearings, and all of the language is may, may, may, then how does that jive with Diggles, where Diggles draws a fine line between what is mandatory and what is discretionary? I believe the reading of some of these subsections makes most of the decisions made by the district court discretionary, which means now we have to talk about, was it orally pronounced? My only other question, and I don't want to dominate, I got to check myself from doing that, is when you say, oh, there's no more disagreement about restitution. When I look at the JNC here, it is internally inconsistent in the restitution owed itself. So you're smiling and you say, yes, but you haven't brought that to our attention. But if so, if you knew it, what's the amount that your client owes joint and severally with the other defendants? I know what the record showed, showed that he made three payments. That's what he testified to under oath. And now we've got a reduction of 24. So he did not appeal the original sentence, the original judgment, which is where he would have launched his challenge about the 31, that number. He didn't make any challenges there saying this was too much. They didn't pick the right people. There's no causal nexus between me and the people that I'm being held accountable for. So I don't see how we could now make a collateral attack on that amount based on the revocation hearing. And I also am not, I'm, I don't want to make a challenge and allow the district court to say, okay, nevermind. It was actually 31. Because my point to you is on record page 181. It says, this is the JNC last page you owe 31,000. The page before 180, it says you owe 24,000. So in the JNC, this is not a conflict with the conviction. So what does your client owe? 24. Okay. We'll see. We'll we'll hear in a few minutes if the government agrees. Okay. I actually, that was, that was the substance of my argument. I was hoping the court was going to, if the court did apply diggles, it would go ahead and adopt the government's position on the special conditions. Uh, go ahead and fix that judgment by striking those. And then, uh, let's, I guess I will reserve, uh, I have some time left on for rebuttal to address what the government's position would be on, uh, the restitution amount. Ms. Keller, quick question, if I could just really more housekeeping than anything. So as I logged on today, um, it seemed to me that Mr. Brown was challenging most everything, but just to confirm, um, he does not challenge the condition of supervised release imposing the 180 days of home detention, correct? He does not challenge that. Okay. Unless the court has any other questions, I will give my time back to the court. Okay. Thank you. Thank you. Thank you, Terry Hagan for the United States. I'll start with the question of restitution. We do agree that the amount owed is the $24,869.11. And what I kind of gleaned from the record is that there were two main victims that Mr. Brown owes restitution to, and that someone was not able to get a hold of one of those victims. And since the court did orally pronounce, um, the $24,000 amount at the revocation sentencing, we think that controls. So we do agree with that. Um, the mandatory special assessment though, district courts are required to order the mandatory special assessment for all defendants convicted of federal offenses under section 3013, as we pointed out in the brief. So that's a condition that is mandatory. And I think that it was in the Wynn case where the fifth circuit in 1990 imposed the mandatory special assessment, even though the court seemed to, the district court seemed to be trying to, if you will, give the defendant a break. Ms. Hagan, but, but I think their argument, their argument is a little different. Absolutely. It's mandatory at original sentencing, but I think they're correct in pointing out that revocation 3583 doesn't require it, which would make sense. The judge has discretion. Then you get a guy like Mr. Brown, who's definitely has had competency issues. He's never had a job in his life. He's got no assets. So it's plausible. The district court said, you know, this is really frustrating, but I'm not going to make you pay the next 90, just like I answered to you. 3583 does not make it mandatory at a revocation sentence. Well, the statute is clear and we think that is what the court was trying to do in Diggles was to clarify that what the statute requires, what the statute says that the court must impose. But where in the statute, where in 3583 does it require imposition of a special assessment? It does not. It, it does not. It would fall under the, any discretionary condition of probation in 3563B, I think. Wouldn't that mean we have to strike it? If you agree that at the revocation sentence, it wasn't. Well, and that's what I would like to take up with this court is what is the appropriate remedy. Now, when we wrote the brief, the law in this court was clear in this pronouncement dictates the appropriate remedy is to vacate the conflicting conditions in the written judgment. And the court did that in two ways. Either the court itself struck the conditions or the court remanded the case to the fifth circuit, I'm sorry, to the district court with instructions to strike those conditions. But during the en banc argument in Diggles, the court asked some very good questions that you never got answered. And those, those questions, those questions include, why doesn't it take care of a due process argument? And that's what we're looking at. And why would the rule be that you have to strike that? And I, I think the court even said, there's, it makes no sense that the court of appeals can't remand the case. And. But Ms. Hagan, I think I remember asking that, but that's not in the decision. I mean, I understand that, but Your Honor, here's the thing. In Diggles, as I think Judge Costa put in a footnote, the court didn't have the opportunity to consider remanding the case for resentencing because you upheld the conditions. You said that they were adopted. But here. We remand where there's ambiguity, right? We remand where there's ambiguity, but there isn't any ambiguity. First of all, the district court forgot to have Mr. Brown allocue. Then when it comes back in and gets the restitution right, there's simply no mention of a special assessment. None. Right. But that's the traditional remedy. But you have supervisory authority over the district court. And so under 28 U.S.C. 2106, you can either affirm, modify, or vacate any judgment. And you can remand the cause for an entry of an appropriate judgment, or you can require further proceedings to be had as maybe just under the circumstances. You want to remand for $90? And this man has no assets. Wouldn't he just get revoked again? I want to remand for $90 and for the other six conditions that the court imposed. And here's why. In United States v. Morrison, the Supreme Court said that in due process violations, the remedy should be consistent with the violation. Here, an appropriate remedy is not to strike those conditions. The appropriate remedy is for this court instead to sua sponte, vacate the judgment, and send the case back for resentencing to the district court. Now, Judge Higginson, you've already pointed out some of the characteristics that Mr. Brown has. But these are other reasons that the record shows, based on the totality of the record, that those supervised release conditions should be imposed. And as the court noted in Tickles, vacating the conditions is a stark remedy. Here, Mr. Brown committed the offense of conviction when at the time he was on probation, parole, or supervised release. After the detention hearing in the detention order, the magistrate judge noted that he has an astonishing 41 arrests, numerous convictions for various offenses, including four evading arrests, two failure to ID, and two failure to appear. The court also noted that he had a blatant disregard for supervised release. I would point out also that the initial petition to revoke his supervised release was filed in June, but the parties agreed to move that petition and continue him on the original conditions. And six months later, probation had to come back in, and a new petition to revoke his supervised release had to be filed. And that's why we're here on this one. Also, the fact that he has paid only $10 toward restitution, excuse me, toward his special assessment, and that, I think, to go back to a question discussed before, I think special assessment abates in five years. So I don't know if that makes any difference to what the money he paid is applied to or not. But the six conditions the court ordered here were very important, and they were necessary. For instance, Ms. Keller pointed out that he spent time in a mental institution, and that's right. Mr. Brown is bipolar. In 2016, he was diagnosed with schizoaffective disorder with hypomania, depression, anxiety adjustment, social functioning, and intellectual development disorders. He also was not wholly forthcoming about his residence, and excuse me, he has been a patient with MHMR since 2013. So as this court has said, and as other courts have said, there are salutary purposes for imposing conditions of supervised release, and that's why we take the position that the court should vacate the judgment and return it. And we would note that the Seventh Circuit in the Johnson case vacated conditions where they were in conflict, and they said with a request that the court reconsider the defendant's conditions of supervised release on remand. And I apologize to the court for not finding that case earlier. I should have found that case, but it's a 2014 case, and it's at 765 Fed Third 702. Last month, this court in Omiki said that you couldn't tell whether the court had orally pronounced the supervised release conditions or not, because while the court adopted the PSR, the conditions were contained in a sentencing recommendation, and it wasn't clear whether that recommendation had been provided to the defendant. Mr. Hagan, I'm just going to ask two questions. One is, I'm just looking at your brief again, and the brief in the relief request said we either vacate them or we remand with an instruction to now is different, isn't it? It is. It is. And we acknowledge that, but we think in retrospect and after reconsidering the argument in the Diggles case that a more appropriate remedy consistent with the Morrison case. The difficulty with changing your argument in oral argument counsel is that your opposing counsel has never heard this. But my second question is, could you respond to Judge Willett's question to Ms. Keller? Looking at the supervised release term, you may know it off the top of your head. I hadn't noticed this originally, but it looks like he might have been given a longer term than is permissible under the statute. If that's true, even though Ms. Keller hasn't asked for relief, what would you recommend that we do? Well, I think the court in all circumstances should do the thing that justice requires, the thing that is fair. And I don't know whether the two-year term violated. I can tell you he was convicted of wire fraud. So his original sentence was 20 years, I think. He did plead pursuant to an 11C1C agreement. So his original sentence was consistent with that, which was 13 months imprisonment and three years of supervised release. When the court imposed the revocation sentence, the sentence was four months imprisonment and two years supervised release. So it's a shorter term of supervised release. Ms. Hagan, I thought it was sort of accepted by both sides. Tell me if I'm wrong that the term of supervised release here was longer than the statute permits. Is that true or not true? No. I'm going to have to say it's not true because I have never looked at that. Like you say, this is being brought to my attention as well for the first time. And if the court would like supplementary briefing on that point, then I would certainly be happy to look at that condition. Look at that issue. So in conclusion, we think that the fair thing to do is for the court to sui sponte, exercise your supervisory authority, and vacate the written judgment, and vacate with instructions to re-sentence Mr. Brown with him present in the courtroom. And doing so, then you could instruct and recognize that the district court is in a superior position to decide the discretionary conditions of supervisory release. And as the court was pointing out in the Diggles argument, supervisory release conditions are important because they help the defendant reintegrate, reenter society successfully, and they help the victim get restitution, and they help protect society from future violations of criminal activity. And while the court did not have the option of exercising that authority in Diggles, you can certainly do it here. And in light of the circumstances that are glaringly apparent from this record, the conditions that Judge Crone imposed, allowing access to his financial records, no new credit charges or lines of credit, no gambling, no psychoactive substances, drug abuse testing and treatment, and participation in psychiatric, psychological, and mental health treatment are all appropriate conditions. And the district court should be given the opportunity to reimpose them. And with that, we'll stand on our brief and our argument, unless the court has other questions. I can respond to the argument by the government asking to have a remand and resentencing, just pointing out a few things. First of all, Mr. Brown was released from his confinement in August of 2020. Since that time, he's been complying with the terms of supervised release. We have not seen another situation arise for this gentleman. He has, so we're talking about two years of supervised release remaining. Within that period of time, you've got 180 days with an standard conditions that are imposed. I'm looking at the judgment, page 179 of the record, and there are 13 different conditions that give the government and the probation office quite a bit of power to supervise and control the conduct of Mr. Brown. We had one revocation hearing done already, then we had the second one, then we had the parties brought back again to allow the allocution. Sometimes it's time to close the book on a case. We're talking about a very short sentence with a very shorter period of time for supervised release. All of the conditions that are applicable, and Mr. Brown talked about, he was trying to get social security benefits so that he would have a source of funding to be able, they were in the process of doing that. I think this would just open not only a Pandora's box for Mr. Brown's case, but also quite a precedent to be set for every single time a mistake is made on a revocation hearing, and that would be asked for every single time by the government if this court does do that. The proper remedy is to vacate those additional terms that were not talked about in the three different hearings that were held, and to allow the process to work. We've got 13 other additional terms to keep track of Mr. Brown and help get him on track. What's your answer in your last 50 seconds to the supervised release total amount exceeding the statutory maximum? I did not see that as exceeding the statutory maximum. I am going to look at that again because of Judge Willard's question, and I will be submitting something this week to the court if that is indeed something that I messed up on and I made a mistake on. Perhaps I was off base with that, but I thought I came across that somewhere, but one question before you log off. Does it matter that at the initial revocation hearing, the magistrate judge imposed what he called the same special condition regarding Brown's restitution payments? Unquote. Yeah. Relevance at all? I mean, wasn't there notice and an opportunity to object then? I saw it's such an ambiguous statement, but I agree. I read that this morning, and I thought that's what I was going to hear as the argument against my position. I just don't think it's enough because at the end of the day, the reason we have Diggles and the reason we're asking how Diggles should apply to revocation cases is notice. Is that ambiguous statement right there in and of itself enough to give Mr. Brown, mentally impaired, needing extra help, notice to make that objection right then and there? And I don't think it's enough. When the court looked at Diggles and gave, I'm sorry if I'm going over just one quick point, the court talked about go to the PSR and point to specific that didn't happen here. Unless the court has any further questions, I'll give my minus 30 seconds. I took it, but thank you, Mr. Thank you. That case will be submitted. We'll proceed to the next case.